# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF FLORIDA

|  |  |
|---|---|
| HENRY THOMPSON and GEORGE VARGHA, individually, and on behalf of all others similarly situated, | Case No._____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| SOUTHSTATE BANK, N.A., | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiffs Henry Thompson and George Vargha ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against SouthState Bank, N.A. ("SouthState" or "Defendant"), and make the following allegations based upon information, attorney investigation and belief, and upon Plaintiffs' own knowledge.

## NATURE OF THE ACTION

1.     Plaintiffs bring this class action lawsuit due to Defendant's failure to properly secure and safeguard sensitive and confidential personally identifiable information ("PII")[1], including the names, Social Security numbers, driver's license

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or

1

numbers and addresses of individuals that had provided information to Defendant for banking purposes. Defendant's wrongful disclosure has harmed Plaintiffs and the Class (defined below).

2.      Defendant is a financial institution that operates more than 240 locations in Alabama, Florida, Georgia, North Carolina, South Carolina and Virginia.

3.      On February 9, 2024, SouthState Bank filed a notice with the Securities and Exchange Commission after learning that it was the victim of a cyberattack first discovered on February 6, 2024.[2]

4.      Plaintiffs' and Class Members' sensitive personal information—which they entrusted to Defendant on the mutual understanding that Defendant would protect it against disclosure—was compromised and unlawfully accessed due to the Data Breach.

5.      Defendant collected and maintained certain personally identifiable information of Plaintiffs and the putative Class Members (defined below), who are (or were) banking with Defendant.

---

identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

[2] https://www.jdsupra.com/legalnews/southstate-bank-notifies-sec-of-9226612/ (Last visited 4/4/24)

6.      Defendant knew or should have known that due the increasing number of well- publicized data breaches that have occurred in the United States, large data storage such as this require the highest level of protection, which Defendant failed to provide.

7.      Plaintiffs and members of the Class ("Class Members") entrusted Defendant with their sensitive and valuable Personal Information for banking purposes. Plaintiffs and Class Members did not know that Defendant's data security was inadequate. They did not expect that services offered by Defendant would directly cause such serious injuries that would last for years after the service.

8.      Plaintiffs bring this action on behalf of all persons in the United States and the South Carolina Sub Class, whose Personal Information was compromised as a result of Defendant's failure to:

      i.   adequately protect its customers' Personal Information;

     ii.   warn customers of its inadequate information security practices; and

   iii.   effectively secure hardware, data, and information systems through reasonable and effective security procedures.

9.      Defendant's conduct constitutes negligence that proximately caused damages to Plaintiffs and Class Members.

10.     Plaintiffs and Class Members have suffered injury as a direct and proximate result of Defendant's conduct.

11.     These above-mentioned injuries to Plaintiffs and the Class Members include:

a. lost or diminished value of Personal Information, a form of property that Defendant obtained from Plaintiffs and Class Members;

b. out-of-pocket expenses associated with preventing, detecting, and remediating identity theft and other unauthorized use of their Personal Information;

c. opportunity costs associated with attempting to mitigate the actual consequences of the data breach, including but not limited to lost time;

d. the continued and certain increased risk that unauthorized persons will access and abuse Plaintiffs' and Class Members' unencrypted Personal Information that is available on the dark web; the continued and certain increased risk that the Personal Information that remains in Defendant's possession is subject to further unauthorized disclosure for so long as Defendant fails to undertake

appropriate and adequate measures to protect the Personal Information;

e.  invasion of privacy; and

f.  theft of their Personal Information and the resulting loss of privacy rights in that information.

12.     As a direct and proximate result of Defendant's breach of confidence and failure to protect the Personal Information, Plaintiffs and Class Members have been injured by facing ongoing, imminent, impending threats of identity theft crimes, fraud, scams, and other misuses of their Personal Information; ongoing monetary loss and economic harm; loss of value of privacy and confidentiality of the stolen Personal Information; illegal sales of the compromised Personal Information; mitigation expenses and time spent on credit monitoring; identity theft insurance costs; credit freezes/unfreezes; expense and time spent on initiating fraud alerts and contacting third parties; decreased credit scores; lost work time; and other injuries.

13.     As a result of the Data Breach, Plaintiffs and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiffs and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

14.     Plaintiffs and Class Members may also incur out of pocket costs, e.g., for purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

15.     Plaintiffs brings this class action lawsuit on behalf all those similarly situated to address Defendant's inadequate safeguarding of Plaintiffs' and Class Members' PII that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiffs and other Class Members that their information had been subject to the unauthorized access by an unknown third party and precisely what specific type of information was accessed.

16.     Through this Complaint, Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose PII was accessed during the Data Breach.

17.     Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## JURISDICTION AND VENUE

18.     This Court possesses subject-matter jurisdiction to adjudicate the claims set forth herein under the provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class

action, (3) there are members of the Class, including Plaintiffs, who are citizens of States diverse from Defendant, and (4) there are more than 100 Class Members.

19.     This Court has Personal Jurisdiction over Defendant because Defendant has sufficient minimal contacts with this District. Defendant has purposefully availed themselves to this Jurisdiction through its marketing, sale, advertising, and promotion of its services throughout this Jurisdiction.

20.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because Defendant transacts its business in this District, and a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this District.

## PARTIES

*Plaintiff*

21.     Plaintiff Henry Thompson is a resident of Marion County, South Carolina.

22.     Prior to the data breach, Plaintiff Henry Thompson had been a customer of Defendant SouthState.

23.     Plaintiff Henry Thompson provided Defendant with all PII that was requested or required in order to bank with Defendant.

24.     Plaintiff Henry Thompson received a notice from Defendant on or about March 29, 2024, that stated Plaintiffs' PII that was collected and maintained by Defendant may have been compromised.

25.     Plaintiff George Vargha is a resident of Charleston County, South Carolina.

26.     Prior to the data breach, Plaintiff George Vargha had also been a customer of Defendant SouthState.

27.     Plaintiff George Vargha provided Defendant with all PII that was requested or required in order to bank with Defendant.

28.     Plaintiff received a notice from Defendant on or about March 29, 2024, that stated Plaintiffs' PII that was collected and maintained by Defendant may have been compromised.

29.     Plaintiffs have been careful to protect their PII from unnecessary exposure, and only provides data when it is required.

30.     Now that Plaintiffs' PII has been exposed in Defendant's breach, Plaintiffs will continue to be at a higher risk of cyber-attacks, scam attempts, and identity theft for the foreseeable future.

31.     This higher risk will require Plaintiffs to invest additional time, energy, and money, as well as suffer additional stress, in order to more closely monitor

access to their identities and credit to ensure there is no unauthorized access or attempted fraud.

***Defendant***

32.     Defendant SouthSate is a Florida Corporation with its principal place of business located in Winter Haven, Florida.

33.     Defendant SouthState Bank is one of the leading regional banks in the Southeast with more than 240 branches and ATMs in Alabama, Florida, Georgia, North Carolina, South Carolina and Virginia.


## FACTUAL ALLEGATIONS

34.     Defendant is a corporation that provides banking services to its customers.

35.     Plaintiffs and Class Members are current and former customers of Defendant.

36.     In the course of their relationship, customers, including Plaintiffs and Class Members, provided Defendant with at least the following: names, dates of birth, contact information, and Social Security numbers.

37.     Upon information and belief, in the course of collecting PII from customers, including Plaintiffs, Defendant promised to provide confidentiality and adequate security for the data it collected from customers through its applicable

privacy policy and through other disclosures in compliance with statutory privacy requirements.

### *Overview of SouthState and its Data Breach*

38.     On or about March 29, 2024, over a month after the date of the Data Breach, Defendant sent Plaintiffs and Class Members a notice of the Data Breach (the "Notice of Security Incident"), informing them, among other things, that:

> "We recently detected and took measures to address an incident that involved unauthorized access to our network. A cybersecurity firm was engaged to assist in an investigation. That investigation determined that there was unauthorized access to certain folders in our network on February 7, 2024. We reviewed the files in those folders, and on March 13, 2024, determined that one or more files contained your name, financial account number, and Social Security number."

39.     Omitted from the Notice Letter were the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again. To date, these omitted details have not been explained or clarified to Plaintiffs and Class Members, who retain a vested interest in ensuring that their PII remains protected.

40.     Defendant offered only minimal assistance to Class Members in the form of one year of identity theft protection services through Identity Defense Total, a data breach and recovery services company.

41.     The unencrypted PII of Plaintiffs and Class Members may end up for sale on the dark web, or simply fall into the hands of companies that will use the

detailed PII for targeted marketing without the approval of Plaintiffs and Class Members. Unauthorized individuals can easily access the PII of Plaintiffs and Class Members.

42.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiffs and Class Members, causing the exposure of PII for Plaintiffs and Class Members.

43.     Because Defendant had a duty to protect Plaintiffs' and Class Members' PII, Defendant should have accessed readily available and accessible information about potential threats for the unauthorized exfiltration and misuse of such information.

44.     Plaintiffs relied on the sophistication and security of Defendant and its network to keep their PII confidential and securely maintained, to use this information for business and/or employment purposes only, and to make only authorized disclosures of this information. Plaintiffs had the understanding that this highly sensitive PII was confidential and would be properly safeguarded from misuse and theft.

45.     Defendant is well aware of its legal privacy obligations, the risks of cyber threats, and that it had obligations created by the FTC Act[3], contract, industry standards, and common law to keep Plaintiffs' PII confidential and to protect it from unauthorized access and disclosure.

46.     Plaintiffs relied on the promises and duties of Defendant and its subsidiaries to keep their sensitive PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

47.     In the course of their dealings, Plaintiffs provided Defendant (either directly or through its business associates and franchisees) with, *inter alia,* the following types of PII:

      a.  First and last name;

      b.  Home addresses;

      c.  Date of birth;

      d.  Financial information;

      e.  Photo identification and/or driver's licenses;

      f.  Email addresses;

---

[3] The Gramm-Leach-Bliley Act requires financial institutions – companies that offer consumers financial products or services like loans, financial or investment advice, or insurance – to explain their information-sharing practices to their customers and to safeguard sensitive data. *See* https://www.ftc.gov/business-guidance/privacy-security (Last visited 4/4/24)

g.  Phone numbers; and

h.  Social Security number.

48.    Defendant had a duty to adopt reasonable measures to protect Plaintiffs' PII from unauthorized disclosure to third parties.

***The Ransomware Attack and the Data Breach were Foreseeable Risks of which Defendant was on Notice***

49.    It is well known that PII, including Social Security numbers, is a valuable commodity and a frequent, intentional target of cyber criminals and hackers. Companies that collect such information, including Defendant, are well aware of the risk of being targeted by cybercriminals.

50.    In the years immediately preceding the Data Breach, Defendant knew or should have known that Defendant's computer systems were a target for cybersecurity attacks because warnings were readily available and accessible via the internet.

51.    There were 2116 reported US data breaches and leaks in the first nine months of 2023, making it the worst year on record to date.[4]

52.    In light of high profile data breaches at other industry leading companies, including Microsoft (250 million records, December 2019), Wattpad

---

[4] https://www.infosecurity-magazine.com/news/us-smashes-data-breach-record/

(268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that its computer network would be targeted by cybercriminals.

53.    In October 2019, the Federal Bureau of Investigation published an article online titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[5]

54.    In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[6]

---

[5] FBI, *High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations* (Oct. 2, 2019) (emphasis added), *available at* https://www.ic3.gov/Media/Y2019/PSA191002

[6] ZDNet, *Ransomware mentioned in 1,000+ SEC filings over the past year* (Sept. 27, 2020) (emphasis added), *available at* https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/

55.     In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to  release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[7]

56.     Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

57.     According to an FBI publication, "Ransomware is a type of malicious software, or malware, that prevents you from accessing your computer files, systems, or networks and demands you pay a ransom for their return. Ransomware attacks can cause costly disruptions to operations and the loss of critical information and data."[8]

58.     Prior to the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiffs' and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack.

---

[7] https://www.cisa.gov/sites/default/files/publications/CISA_MS-ISAC_Ransomware%20Guide_S508C.pdf
[8] https://www.fbi.gov/how-we-can-help-you/safety-resources/scams-and-safety/common-scams-and-crimes/ransomware

59.     Prior to the Data Breach, Defendant knew or should have known that it should have encrypted the Social Security numbers and other sensitive data elements within the PII to protect against their publication and misuse in the event of a cyberattack.

60.     Despite the prevalence of public announcements of data breach and data security compromises, and despite its own present and prior acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep PII private and secure, Defendant failed to take appropriate steps to prevent the PII of Plaintiffs and the Putative Class from being compromised.

***Defendant Had a Duty to Plaintiffs and the Putative Class to Properly Secure their PII.***

61.     At all relevant times, Defendant had a legal and equitable duty to Plaintiffs to properly secure their PII, encrypt and maintain such information using industry standard methods, train its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiffs, and to *promptly* notify Plaintiffs when Defendant became aware that their PII was compromised.

62.     Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff. The special

relationship arose because Plaintiffs and Class Members entrusted Defendant with their PII when they were employees.

63.    Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information. Accordingly, Defendant breached its common law, statutory, and other duties owed to Plaintiffs and Class Members.

64.    Security standards commonly accepted among businesses that store PII using the internet include, without limitation:

    a.  Maintaining a secure firewall configuration;

    b.  Maintaining appropriate design, systems, and controls to limit user access to certain information as necessary;

    c.  Monitoring for suspicious or irregular traffic to servers;

    d.  Monitoring for suspicious credentials used to access servers;

    e.  Monitoring for suspicious or irregular activity by known users;

    f.  Monitoring for suspicious or unknown users;

    g.  Monitoring for suspicious or irregular server requests;

    h.  Monitoring for server requests for PII;

    i.  Monitoring for server requests from VPNs; and

    j.  Monitoring for server requests from Tor exit nodes.

65.    To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendant could and should have

implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's help desk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or Zip files.

- **Keep your personal information safe**. Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[9]

66.     Defendant could have prevented this Data Breach by properly securing and encrypting the folders, files, and or data fields containing the PII of Plaintiffs and Class Members.  Alternatively, Defendant could have destroyed the data it no longer had a reasonable need to maintain or only stored data in an Internet-accessible environment when there was a reasonable need to do so.

67.     Defendant's negligence in safeguarding the PII of Plaintiffs and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data, and the over one-month delay in providing notice to impacted customers.

---

[9] *See How to Protect Your Networks from RANSOMWARE*, at 3-4, *available at* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last accessed April 4, 2024).

68.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[10] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[11]

69.     The ramifications of Defendant's failure to keep consumers' PII secure are long lasting and severe. Once PII is stolen, particularly Social Security numbers and driver's license numbers, fraudulent use of that information and damage to victims including Plaintiffs may continue for years.

***Defendant Maintains Control Over Plaintiffs' PI***

70.     Defendant acquires, collects, and stores a massive amount of PII on its customers, former customers, and other personnel.

71.     As a condition of obtaining home loans, mortgages, or other services at Sage, Defendant requires that customers personnel entrust it with highly sensitive personal information.

---

[10] 17 C.F.R. § 248.201 (2013).
[11] *Id.*

72.     By obtaining, collecting, and using Plaintiffs' and Class Members' PII, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' PII from disclosure.

73.     Plaintiffs and the Class Members have taken reasonable steps to maintain the confidentiality of their PII and would not have entrusted it to Defendant absent a promise to safeguard that information.

74.     Upon information and belief, in the course of collecting PII from customers, including Plaintiffs, Defendant promised to provide confidentiality and adequate security for their data through its applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.

75.     Plaintiffs and the Class Members relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

***Value of Personally Identifying Information***

76.     The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200.[12]

---

[12] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed April 4, 2024).

77.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> "A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems."[13]

78.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

79.     Even a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old

---

[13] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed April 4, 2024).

number, so all of that old bad information is quickly inherited into the new Social Security number."[14]

80.     As one would expect, this data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[15]

81.     Among other forms of fraud, identity thieves may use Social Security numbers to obtain driver's licenses, government benefits, medical services, and housing, give false information to police, and obtain tax returns or open fraudulent credit card accounts in Plaintiffs' names.

82.     The Private Information compromised in this Data Breach is static and difficult, if not impossible, to change (such as Social Security numbers).

83.     Defendant's credit monitoring offer and advice to Plaintiffs places the burden on Plaintiffs, rather than the Defendant, to monitor and report suspicious activities to law enforcement. Simply put, Defendant expects Plaintiffs to protect

---

[14] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), available at: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last accessed April 4, 2024).
[15] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, Computer World (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed April 4, 2024).

themselves from *Defendant's* tortious acts resulting in the Data Breach. Rather than automatically enrolling Plaintiffs in credit monitoring services upon discovery of the breach, Defendant merely sent instructions to Plaintiffs about actions they can affirmatively take to protect herself.

84.     These services are wholly inadequate as they fail to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud, and they entirely fail to provide any compensation for the unauthorized release and disclosure of Plaintiffs' PII.

85.     The injuries to Plaintiffs were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the victims of its Data Breach.

### *Defendant Failed to Comply with FTC Guidelines*

86.     Federal and State governments have established security standards and issued recommendations to mitigate the risk of data breaches and the resulting harm to consumers and financial institutions. The Federal Trade Commission ("FTC") has issued numerous guides for business highlighting the importance of reasonable data

security practices. According to the FTC, the need for data security should be factored into all business decision-making.[16]

87.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[17] The guidelines note businesses should protect the personal consumer and consumer information that they keep, as well as properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.

88.    The FTC has brought enforcement actions against businesses for failing to protect consumer and consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

---

[16] Federal Trade Commission, *Start With Security,* available at: https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed April 4, 2024).

[17] Federal Trade Commission, *Protecting Personal Information: A Guide for Business,* available at: https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last accessed April 4, 2024).

89.     Because Plaintiffs entrusted Defendant with their PII, Defendant had, and still has, a duty to the Plaintiffs to keep their PII secure.

90.     Plaintiffs reasonably expected that when they provided PII to Defendant, Defendant would safeguard their PII.

91.     Defendant was at all times fully aware of its obligation to protect the personal and financial data, including Plaintiffs'. Defendant was also aware of the significant repercussions if it failed to do so.

92.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential data—including Plaintiffs' first, middle, and last name, addresses, Social Security number, and other highly sensitive and confidential information—constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

***Concrete Injuries are Caused by Defendant's Inadequate Security***

93.     Plaintiffs reasonably expected that Defendant would provide adequate security protections for their PII, and Plaintiffs provided Defendant with sensitive personal information, including their name, address, and Social Security number.

94.     Defendant's poor data security deprived Plaintiffs and Class Members of the benefit of their bargain. Plaintiffs and other individuals whose PII was entrusted with Defendant understood and expected that, as part of that relationship, they would receive data security, when in fact Defendant did not provide the

expected data security. Accordingly, Plaintiffs and Class Members received data security services that were of a lesser value than what they reasonably expected. As such, Plaintiffs and Class Members suffered pecuniary injury.

95.     Cybercriminals intentionally attack and exfiltrate PII to exploit it. Thus, Plaintiffs are now, and for the rest of their lives will be, at a heightened and substantial risk of identity theft. Plaintiffs and Class Members have also incurred (and will continue to incur) damages in the form of, *inter alia*, loss of privacy and costs of engaging adequate credit monitoring and identity theft protection services.

96.     The cybercriminals who obtained Plaintiffs' and Class Members' PII may exploit the information they obtained by selling the data in so-called "dark markets" or on the "dark web." Having obtained these names, addresses, Social Security numbers, and other PII, cybercriminals can pair the data with other available information to commit a broad range of fraud in Plaintiffs' name, including but not limited to:

      a.  Obtaining employment;

      b.  Obtaining a loan;

      c.  Applying for credit cards or spending money;

      d.  Filing false tax returns;

      e.  Stealing Social Security and other government benefits; and

      f.  Applying for a driver's license, birth certificate, or other public document.

97.    In addition, if an individual's Social Security number is used to create false identification for someone who commits a crime, that individual may become entangled in the criminal justice system, impairing the person's ability to gain employment or obtain a loan.

98.    Accordingly, as a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiffs and Class Members have been placed at an imminent, immediate, and continuing increased risk of identity theft and identity fraud. Indeed, "[t]he level of risk is growing for anyone whose information is stolen in a data breach."[18] Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. Even data that has not yet been exploited by cybercriminals bears a high risk that the cybercriminals who now possess Plaintiffs' PII will exploit the data at a later date or re-sell it to other possible exploiters.

99.    As a result of the Data Breach, Plaintiffs has already suffered injuries, and now faces a substantial and imminent risk of future identity theft.

***Data Breaches Put Consumers at an Increased Risk of Fraud and Identify Theft***

---

[18] Susan Ladika, *Study: Data Breaches Pose A Greater Risk* (July 23, 2014), https://www.foxbusiness.com/features/study-data-breaches-pose-a-greater-risk  (last accessed April 4, 2024).

100.   Data Breaches, such as the one Plaintiffs and Class Members experienced, are especially problematic because of the disruption they cause to the overall daily lives of victims affected by the attack.

101.   The FTC, like the United States Government Accountability Office, recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[19]

102.   Theft of PII is also gravely serious as PII is a valuable property right.[20]

103.   It must also be noted there may be a substantial time lag – measured in years -- between when harm occurs versus when it is discovered, and also between when PII and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which has conducted studies regarding data breaches:

> "[L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft.

---

[19] *See* https://www.identitytheft.gov/Steps (last accessed April 4, 2024).

[20] *See, e.g.,* John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[21]

104.    PII and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years. Accordingly, because of Defendant's conduct, Plaintiffs and Class Members must now worry about identity theft for years on end.

## CLASS ACTION ALLEGATIONS

105.   Plaintiffs bring this action on behalf of themselves, and all others similarly situated pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure. Plaintiffs seek class certification on behalf of the classes defined as follows (collectively, "the Class").

**<u>Nationwide Class:</u>**

All individuals residing in the United States whose PII was accessed and/or acquired by an unauthorized party as a result of the data breach reported by Defendant on March 29, 2024 (the "Class").

---

[21] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," p. 2, U.S. Government Accountability Office, June 2007, https://www.gao.gov/new.items/d07737.pdf (last accessed April 4, 2024).

**South Carolina Sub Class**:

All individuals residing in South Carolina whose PII was accessed and/or acquired by an unauthorized party as a result of the data breach reported by Defendant on March 29, 2024 (the "South Carolina Sub Class").

106.   Plaintiffs reserves the right to modify or amend the definition of the proposed classes before the court determines whether certification is appropriate.

107.   Excluded from the Class are any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, or co-conspirators of Defendant, and all governmental entities, including any judge, justice or judicial officer presiding over this matter.

108.   The Nationwide Class and South Carolina Sub Class shall be referred to as the "Class." Proposed Members of said Class will be referred to as "Class Members," or otherwise referenced as "members of the Class."

109.   **Numerosity:** The members of the Class are so numerous that joinder of all members of the Class is impracticable. The precise number of Class Members is currently unknown to Plaintiff.

110.   **Typicality:** Plaintiffs' claims are typical to those of all Class Members because members of the Class are similarly injured through Defendant's uniform misconduct described above and were subject to their personal data released due to

Defendant's conduct. Plaintiffs is advancing the same claims and legal theories on behalf of themselves and all members of the Class.

111. **Commonality**: Plaintiffs' claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class Members. The claims of Plaintiffs and all prospective Class Members involve the same alleged data breach. These common legal and factual questions include the following:

a. Whether Defendant's data breach exposed their personal information

b. Whether Defendant owed a duty of care to Plaintiffs and the Class;

c. Whether Defendant knew or should have known that its data security was inadequate;

d. Whether Defendant wrongfully represent, and continue to represent, that its security is adequate;

e. Whether the alleged conduct constitutes violations of the laws asserted;

f. Whether Defendant's alleged conduct violates public policy;

g. Whether Defendant's representations in advertising are false, deceptive, and misleading;

h. Whether a reasonable consumer would consider the risk of their data being exposed when choosing to do business with Defendant;

i. Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23; and

j. Whether Plaintiffs and the Class Members are entitled to damages and/or restitution and the proper measure of that loss.

112. **Adequacy:** Plaintiffs and their counsel will fairly and adequately protect and represent the interests of members of the Class. Plaintiffs have retained counsel experienced in complex litigation and class actions. Plaintiffs' counsel has successfully litigated other class action cases like that here, and has the resources and abilities to fully litigate and protect the interests of the Class. Plaintiffs intend to prosecute this claim vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class, nor are Plaintiffs subject to any unique defenses.

113. **Superiority:** A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by Plaintiffs and the individual Class Members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiffs and Class Members, on an individual basis, to obtain

meaningful and effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiffs know of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

114.   The Class also may be certified because Defendant has acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

115.   Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from continuing to provide inadequate data security. Further, Plaintiffs seek for Defendant to provide a full refund of all protective and defensive procedures that Plaintiffs and the Class Members have had to employ.

116.   Unless a Class is certified, Plaintiffs and the Class Members will continue to be injured due to Defendant's conduct. Unless a Class-wide injunction is issued, Defendant may continue to commit the violations alleged and the members of the Class and future customers may continue to be placed in harms' way.

## CAUSES OF ACTION

## COUNT I
## NEGLIGENCE

**(On Behalf of Plaintiffs and the Nationwide Class, or Alternatively, on Behalf of Plaintiffs and the South Carolina Subclass)**

117.    Plaintiffs incorporates Paragraph 1-116 by reference as if fully set forth herein.

118.    Defendant requires its customers, including Plaintiffs and Class Members, to submit non-public PII in the ordinary course of providing its mortgage and loan services.

119.    As part of the regular course of its business operations, Defendant gathered and stored the PII of Plaintiffs and Class Members. Plaintiffs and the Class were entirely dependent on Defendant to use reasonable measures to safeguard their PII and were vulnerable to the foreseeable harm of a security breach should Defendant fail to safeguard their PII.

120.    Plaintiffs and Class Members entrusted Defendant with their PII with the understanding that Defendant would safeguard their information.

121.    By collecting and storing this data in its computer property, and sharing it, and using it for commercial gain, Defendant assumed a duty of care to use reasonable means to secure and safeguard its computer property—and Class Members' PII held within it— to prevent disclosure of the information, and to safeguard the information from theft. Defendants' duty included a responsibility to implement processes by which it could detect a breach of its security systems in a

reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

122.   Defendant owed a duty of care to Plaintiffs and the Class to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the PII.

123.   Defendant's duty also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect PII by companies such as Defendant's. Various FTC publications and data security breach orders further form the basis of Defendant's duty. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty.

124.   Plaintiffs and members of the Class are within the class of persons that the FTC Act was intended to protect.

125.   The harm that occurred because of the data breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

126.   Defendant gathered and stored the PII of Plaintiffs and the Class as part of its business of soliciting its services to its customers which solicitations and services affect commerce.

127.   Defendant violated the FTC Act by failing to use reasonable measures to protect the PII of Plaintiffs and the Class Members, and by not complying with applicable industry standards.

128.   Defendant breached its duties to Plaintiffs and the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard its customer's PII, and by failing to provide prompt notice without reasonable delay. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its customers, which is recognized by laws and regulations including but not limited to FTCA, as well as common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiffs and the Class and to minimize the data breach.

129.   Defendant's multiple failures to comply with applicable laws and regulations, and the violation of Section of 5 of the FTC Act constitutes negligence per se.

130.   Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

131.   Defendant had full knowledge of the sensitivity of the PII, the types of harm that Plaintiffs could and would suffer if the PII was wrongfully disclosed, and the importance of adequate security.

132.   Plaintiffs and the Class Members were the foreseeable victims of any inadequate safety and security practices. Plaintiffs and the Class had no ability to protect their PII that was in Defendant's possession.

133.   Defendant was in a special relationship with Plaintiffs and the Class with respect to the hacked PII because the aim of Defendant's data security measures was to benefit Plaintiffs by ensuring that their PII would remain protected and secure. Defendant was the only party able to ensure that its systems were sufficiently secure to protect Plaintiffs' and other Class Members' PII. The harm to Plaintiffs and the Class from its exposure was highly foreseeable to Defendant.

134.   Defendant owed Plaintiffs and other Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiffs and the Class when obtaining, storing, using, and managing their PII, including acting to reasonably safeguard such data and providing notification to Plaintiffs and

the Class of any breach in a timely manner so that appropriate action could be taken to minimize losses.

135.   Defendant had duties to protect and safeguard the PII of Plaintiffs and the other Class Members from being vulnerable to compromise by taking common-sense precautions when dealing with highly sensitive PII. Additional duties that Defendant owed Plaintiffs and the Class members include:

a. Exercising reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, protocols, policies, procedures, and practices to ensure that individuals PII was adequately secured from impermissible release, disclosure, and publication;

b. To protect Plaintiffs' and the Class's PII in its possession by using reasonable and adequate security procedures and systems; and

c. To promptly notify Plaintiffs and the Class members of any breach, security incident, unauthorized disclosure, or intrusion that affected or may have affected their PII.

136.   Only Defendant was able to ensure that its systems and protocols were sufficient to protect the PII that had been entrusted to them.

137.   Defendant breached its duty of care by failing to adequately protect Plaintiffs' and the Class's PII. Defendant breached its duty by:

a. Failing to exercise reasonable care in obtaining, retaining, securing, safeguarding, protecting, and deleting the PII in its possession;

b. Failing to protect the PII in its possession using reasonable and adequate security procedures and systems;

c. Failing to adequately and properly audit, test, and train its employees regarding how to properly and securely transmit and store PII;

d. Failing to adequately train its employees to not store unencrypted PII in its personal files longer than absolutely necessary for the specific purpose that it was sent or received;

e. Failing to consistently enforce security policies aimed at protecting Plaintiffs' and the Class's PII;

f. Failing to mitigate the harm caused to Plaintiffs and the Class;

g. Failing to implement processes to quickly detect data breaches, security incidents, or intrusions; and

h. Failing to promptly notify Plaintiffs and other Class Members of the data breach that affected their PII.

138. Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

139.   Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiffs and the Class during the time the PII was within Defendant's possession or control.

140.   Defendant's failure to provide timely and clear notification of the data breach to Plaintiffs and the Class prevented Plaintiffs and the Class from taking meaningful, proactive steps to securing their PII and mitigating damages.

141.   Defendant's wrongful actions, inaction, and omissions constituted (and continue to constitute) common law negligence.

142.   As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiffs and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the data breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain

in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession; and (viii) future costs in terms of time, effort, and money that will be expended to monitor bank accounts and credit reports, prevent, detect, contest, and repair the impact of the PII compromised as a result of the data breach for the remainder of the lives of Plaintiffs and the members of the Class.

143.   As a direct and proximate result of Defendant's negligence, Plaintiffs and the members of the Class have suffered (and will continue to suffer) other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non- economic losses.

144.   Additionally, as a direct and proximate result of Defendant's negligence and negligence per se, Plaintiffs and members of the Class have suffered and will suffer the continued risks of exposure of their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

145.   Plaintiffs and members of the Class have suffered injury and are entitled to actual damages in amounts to be proven at trial.

146.   Plaintiffs and members the Class seek actual damages, attorney's fees, costs, and any other just and proper relief available thereunder for Defendant's negligent handling of their PII.

## COUNT II
## NEGLIGENCE *PER SE*
## (On Behalf of Plaintiffs and the Nationwide Class, or Alternatively, on Behalf of Plaintiffs and the South Carolina Subclass)

147.   Plaintiffs incorporates Paragraph 1-116 by reference as if fully set forth herein.

148.   Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 prohibits "unfair. . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies such as Defendant of failing to use reasonable measures to protect Personal Information.

149.   The FTC publications and orders also form the basis of Defendant's duty.

150.   Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Personal Information and not complying with applicable industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of Personal Information it obtained, stored, and disseminated, and the foreseeable consequences of a data breach involving a

company as large as Defendant, including, specifically the damages that would result to Plaintiffs and Class Members.

151.   In addition, under state data security statutes, Defendant had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and Class Members' Personal Information.

152.   Defendant's violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence per se.

153.    Section 5 of the FTC Act imposes strict liability.

154.   Plaintiffs and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

155.   The harm that has occurred is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

156.   Defendant breached its duties to Plaintiffs and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Personal Information.

157.    Plaintiffs and Class Members were foreseeable victims of Defendant's violations of the FTC Act, and state data security statutes. Defendant knew or should

have known that its failure to implement reasonable measures to protect and secure Plaintiffs' and Class Members' Personal Information would cause damage to Plaintiffs and Class Members.

158.   But for Defendant's violation of the applicable laws and regulations, Plaintiffs' and Class Members' Personal Information would not have been accessed by unauthorized parties.

159.   There is a close causal connection between Defendant's failure to implement or ensure security measures to protect the PII of Plaintiffs and the Class and the harm, or risk of imminent harm, suffered by Plaintiffs and the Class. The PII of Plaintiffs and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

160.   As a direct and proximate result of Defendant's negligence per se, Plaintiffs and Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen Personal Information; illegal sale of the compromised Personal Information on the black market; mitigation

expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the data breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the Personal Information; lost value of access to their Personal Information permitted by Defendant; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of Defendant's data breach; lost benefit of their bargains and overcharges for services; nominal and general damages; and other economic and non- economic harm.

161. Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

162. Defendant's negligent conduct is ongoing, in that it still holds the PII of Plaintiffs and Class Members in an unsafe and insecure manner.

163. Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

## COUNT III
## BREACH OF CONTRACT

**(On Behalf of Plaintiffs and the Nationwide Class, or Alternatively, on Behalf of Plaintiffs and the South Carolina Subclass)**

164.    Plaintiffs incorporates Paragraph 1-116 by reference as if fully set forth herein.

165.    As part of doing business with Defendant, Plaintiffs and members of the Class are required to provide Defendant with personal information when entering a contract with Defendant before they are able to receive the benefit of any services from Defendant.

166.    Plaintiffs and Class Members were customers of Defendant, and therefore had entered a contract with Defendant.

167.    Part of that contract, whether expressed or implied, is that Defendant would provide adequate protection of customer's account and personal information, and prevent that data from being given away, sold, or stolen.

168.    By failing to adequately update its protection software, Defendant has breached its contract with each Plaintiffs and Class Member by proving inadequate protection.

169.    This breach has resulted in damages and injuries to Plaintiffs and the Class Members, who have had their personal information and account details stolen and thus are more likely to be subject to cyber-attacks, identity fraud, as well as unwanted spam and scam messages.

170.   Throughout most of Defendant's history they have provided reasonably proactive data security, preventing many of the cyber-attacks that they have been the target of.

171.   Defendant's failure to keep the Plaintiffs' and the Class Members' data secure constitutes a material breach of the agreements between Defendant, and Plaintiffs and the Class Members. By doing so, Defendant has harmed Plaintiffs and each Class Member.

172.   Plaintiffs and the Class seek actual damages, attorney's fees, costs, and any other just and proper relief available thereunder for Defendant's breach of contract.

**<u>COUNT IV</u>**
**UNJUST ENRICHMENT**
**<u>(In the Alternative, On Behalf of Plaintiffs and the Nationwide Class, or</u>**
**<u>Alternatively, on Behalf of Plaintiffs and the South Carolina Subclass)</u>**

173.   Plaintiffs incorporates Paragraph 1-116 by reference as if fully set forth herein

174.   This Count is pleaded in the alternative to the breach of contract and breach of implied contract counts above.

175.   Plaintiffs and the members of the Class have conferred a benefit to Defendant in the form of monies paid in interest for convenient home equity loans, among other charges for other services offered by Defendant. In exchange, Plaintiffs

and Class Members should have received from Defendant the services that were the subject of the transaction and should have had their PII protected with adequate data security.

176.   Included in these services provided, whether expressed or implied, is the secured protection and safekeeping of Plaintiffs' and Class Members' personal and account information.

177.   These monies were not given as a gift, but rather with the expectation and understanding that services would be provided in return.

178.   Defendant has accepted and appreciated the monies paid, as they have continued to provide its services to Plaintiffs and the Class Members, per the terms of their agreements.

179.   Then, in July 2023, it was discovered that Defendant had failed and was no longer able to provide safe and secure protection of Plaintiffs' and Class Members' data.

180.   Defendant acquired the PII through inequitable record retention as it failed to investigate and/or disclose the inadequate data security practices previously alleged.

181.   Defendant has retained all monies paid by Plaintiffs and Class Members, even though they have failed to provide the secure service that Plaintiffs and Class Members, whether expressed or implied, paid for.

182.   Defendant's retention of these monies paid would be inequitable, as Plaintiffs and Class Members have paid value for a benefit that they were not provided.

183.   Not only was Plaintiffs and the Class Members not provided a service for which they paid for, but they will now have to pay additional costs out of pocket in attempts of preventing their data from causing them further harm.

184.   Plaintiffs and the Class seek actual damages, attorney's fees, costs, and any other just and proper relief available under the laws.

## COUNT V

**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiffs and the Nationwide Class, or Alternatively, on Behalf of Plaintiffs and the South Carolina Subclass)**

185.   Plaintiffs incorporates Paragraph 1-116 by reference as if fully set forth herein.

186.   This Count is pleaded in the alternative to Count II and Count III above.

187.   Defendant provides financial services to Plaintiffs and Class Members. Plaintiffs and Class Members formed an implied contract with Defendant regarding the provision of those services through their collective conduct.

188.   Through Defendant's provision of services, it knew or should have known that it must protect Plaintiffs' and Class Members' confidential Personal

Information and PII in accordance with Defendant's policies, practices, and applicable law, including the FTC Act.

189.   As part of receiving services, Plaintiffs and Class Members turned over valuable Personal Information and PII to Defendant. Accordingly, Plaintiffs and Class Members bargained with Defendant to securely maintain and store their Personal Information.

190.   Plaintiffs and the Class entrusted their PII to Defendant. In so doing, Plaintiffs and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and the Class if their data had been breached and compromised or stolen.

191.   Implicit in the agreement between Plaintiffs and Class Members and the Defendant to provide PII, was the latter's obligation to: (a) use such PII for business purposes only, (b) take reasonable steps to safeguard that PII, (c) prevent unauthorized disclosures of the PII, (d) provide Plaintiffs and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII, (e) reasonably safeguard and protect the PII of Plaintiffs and Class Members from unauthorized disclosure or uses, (f) retain the PII only under conditions that kept such information secure and confidential.

192.   Defendant solicited, offered, and invited Plaintiffs and Class Members to provide their PII as part of Defendant's regular business practices. Plaintiffs and Class Members accepted Defendant's offers and provided their PII to Defendant.

193.   In accepting the PII of Plaintiffs and Class Members, Defendant understood and agreed that it was required to reasonably safeguard the PII from unauthorized access or disclosure.

194.   On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiffs' and Class Members' PII would remain protected.

195.   Plaintiffs and Class Members paid money to Defendant with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

196.   Plaintiffs and Class Members would not have entrusted their PII to Defendant in the absence of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

197.   Defendant violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiffs' and Class Members' Personal Information.

198.   As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiffs and Class Members sustained damages, as alleged herein, including the loss of the benefit of the bargain.

199.   Plaintiffs and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

200.   Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

## COUNT VI

**BREACH OF FIDUCIARY DUTY**
**(On Behalf of Plaintiffs and the Nationwide Class, or Alternatively, on Behalf of Plaintiffs and the South Carolina Subclass)**

201.   Plaintiffs incorporates Paragraph 1-116 by reference as if fully set forth herein.

202.   As a condition of obtaining services from Defendant, Plaintiffs and Class Members gave Defendant their Personal Information and PII in confidence, believing that Defendant would protect that information. Plaintiffs and Class Members would not have provided Defendant with this information had they known

their information would not be adequately protected. Defendant's acceptance and storage of Plaintiffs' and Class Members' Personal Information and PII created a fiduciary relationship between Defendant and Plaintiffs and Class Members. In light of this relationship, Defendant must act primarily for the benefit of its patients, which includes safeguarding and protecting Plaintiffs' and Class Members' Personal Information and PII. Defendant has a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of their relationship.

203. Defendant breached that duty by failing to properly protect the integrity of the systems containing Plaintiffs' and Class Members' Personal Information and PII, and otherwise failing to safeguard Plaintiffs' and Class Members' Personal Information and PII that it collected, retained, and stored.

204. As a direct and proximate result of Defendant's negligence, Plaintiffs and Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen Personal Information; illegal sale of the compromised Personal Information on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit

freezes and unfreezes; time spent in response to the data breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the Personal Information; lost value of access to their Personal Information permitted by Defendant; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of Defendant's data breach; and lost benefit of their bargains and overcharges for services.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class, respectfully request the Court to enter a judgment on their behalf and on behalf of the Class as follows:

a) Certification of the action as a Class Action Pursuant to Federal Rule of Civil Procedure 23, and appointment of Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

b) That acts alleged herein be adjudged and decreed to constitute negligence, breach of contract, unjust enrichment, and breach of fiduciary duty.

c) A judgment against Defendant for the damages sustained by Plaintiffs and the Class defined herein, and for any additional damages, penalties, and other monetary relief provided by applicable law;

d) Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    (1) Defendant continues to owe a legal duty to secure consumers' Personal Information and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, and various state statutes; and

    (2) Defendant continues to breach this legal duty by failing to employ reasonable measures to secure consumers' Personal Information.

e) An order providing injunctive and other equitable relief as necessary to protect the interests of the Class, including, but not limited to:

    (1) Ordering that Defendant engages additional third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

    (2) Ordering that Defendant engages additional third-party security auditors and internal personnel to run automated security monitoring;

    (3) Ordering that Defendant audits, tests, and trains its security personnel regarding any new or modified procedures;

(4) Ordering that Defendant segment consumer data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, unauthorized third parties cannot gain access to other portions of Defendant's systems;

(5) Ordering Defendant to purge, delete, and destroy in a reasonably secure manner consumer data not necessary for its provisions of services;

(6) Ordering Defendant to conducts regular database scanning; and

(7) Ordering Defendant to routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

f) By awarding Plaintiffs and Class Members pre-judgment and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of the Complaint in this action;

g) The costs of this suit, including reasonable attorney fees; and

h) Such other and further relief as the Court deems just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs, individually and on behalf of all those similarly situated, hereby request a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: April 6, 2024                    Respectfully submitted,

*/s/Jeff Ostrow*
Jeff Ostrow (FL Bar No. 121452)
Jonathan Streisfeld (FL Bar No. 117447)
Kristen Lake Cardoso (FL Bar No. 44401)
**KOPELOWITZ OSTROW P.A.**
One W. Las Olas Boulevard, Ste. 500
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
ostrow@kolawyers.com
streisfeld@kolawyers.com
cardoso@kolawyers.com

-AND-

Paul J. Doolittle (Fed ID #6012) (*Pro Hac Vice* Forthcoming)
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street Charleston, SC 29403
Tel: (803) 222-2222
Email: paul.doolittle@poulinwilley.com

*Attorneys for Plaintiffs*